UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| TONI DANILLE WATSON, | ) |
| | ) |
| *Petitioner*, | ) |
| | ) Case No.: 1:19-cv-265 |
| v. | ) |
| | ) Judge Curtis L. Collier |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| *Respondent*. | ) |

# **M E M O R A N D U M**

Before the Court is Petitioner's motion to vacate her sentence under 28 U.S.C. § 2255 in Case No. 1:17-cr-118. (Doc. 3 in Case No. 1:19-cv-265, Doc. 62 in Case No. 1:17-cr-118.) The Government has responded in opposition. (Doc. 7 in Case No. 1:19-cv-265.) Petitioner has not filed a reply and the time to do so has expired. *See* E.D. Tenn. L.R. 7.1(a). For the reasons set out below, the Court will **DENY** Petitioner's motion.

## I.  BACKGROUND

### A.  Offense Conduct

On February 21, 2018, Petitioner pleaded guilty to one count of possession with intent to distribute 50 grams or more of a mixture and substance containing methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). (Doc. 26 in Case No. 1:17-cr-118.)

According to the plea agreement, on February 3, 2017, Petitioner was "sitting in the living room packaging methamphetamine when . . . officers made entry into [her] residence." (Doc. 21 at 2 in Case No. 1:17-cr-118.) Officer Rodd Watters with the Drug Enforcement Agency advised Petitioner of her *Miranda* rights. Petitioner admitted to Officer Watters that all the methamphetamine seized at the residence belonged to her. (*Id*.) Petitioner advised that she sold

methamphetamine for between $550 and $600 per ounce and she paid $6,200 for a pound of methamphetamine. (*Id*.) She also admitted that she "possessed the methamphetamine that was seized from her residence on February 3, 2017, with the intent to distribute same." (*Id*. at 3.)

Ultimately, Petitioner was sentenced to 84 months of imprisonment followed by four years of supervised release. (Doc. 59 in Case No. 1:17-cr-118.)

     **B.**       **28 U.S.C. § 2255 Petition**

On September 9, 2019, Petitioner filed her 28 U.S.C. § 2255 petition, moving to vacate her sentence to time served based on three issues that she claims amount to ineffective assistance of counsel: first, Petitioner's trial counsel did not file a direct appeal because trial counsel worked with Petitioner's first counsel in the Federal Defenders Service; second, Petitioner's counsel did not file a motion to suppress the fruits of a search of her cellphone; and third, Petitioner's counsel did not object to a sentence enhancement for selling drugs from Petitioner's residence. (Docs. 3, 4 in Case No. 1:19-cv-265.) The Government has filed a response in opposition (Doc. 7 in Case No. 1:19-cv-265), and the time for filing a reply has expired. *See* E.D. Tenn. L.R. 7.1(a).

**II.**       <u>**STANDARD OF REVIEW**</u>

Under 28 U.S.C. § 2255, a federal prisoner may move to vacate, set aside, or correct a sentence when the sentence imposed was in violation of the Constitution or federal law, the court was without jurisdiction to impose such a sentence, the sentence was in excess of the maximum authorized by law, or the sentence is otherwise subject to collateral attack. To prevail on a § 2255 motion, the petitioner "must allege one of three bases as a threshold standard: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001) (citing *United States v. Addonizio*, 442 U.S. 178, 185–

86 (1979)). Thus, "a petitioner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982). This is in line with the historic meaning of habeas corpus, which is "to afford relief to those whom society has 'grievously wronged.'" *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

Rule 4(b) of the Rules Governing Section 2255 Proceedings requires a district court to summarily dismiss a § 2255 motion if "it plainly appears from the face of the motion, any attached exhibits, and the record of the prior proceedings that the moving party is not entitled to relief." *See* Rules Governing Section 2255 Proceedings in United States District Courts Rule 4(b).

If the motion is not summarily dismissed, Rule 8(a) of the Rules Governing Section 2255 Proceedings requires the district court to determine, after a review of the answer and the records of the case, whether an evidentiary hearing is required. *See* Rules Governing Section 2255 Proceedings in United States District Courts Rule 8(a). A petitioner's burden of establishing that he is entitled to an evidentiary hearing is relatively light. *See Martin v. United States*, 889 F.3d 827, 832 (6th Cir. 2018). If a petitioner presents a legitimate factual dispute, then "the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013) (quoting *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007)).

An evidentiary hearing is not required, however, if "the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Martin*, 889 F.3d at 832 (quoting *MacLloyd v. United States*, 684

3

F. App'x 555, 559 (6th Cir. 2017) (internal quotation marks omitted)). Nor does a petitioner's assertion of innocence, without more, entitle him to a hearing. *Martin*, 889 F.3d at 832.

## III. DISCUSSION

The Court conducted an initial review of Petitioner's § 2255 motion and determined from its face that it should not be summarily dismissed. (Doc. 6 in Case No. 1:17-cv-265.[1]) Upon further review of the submissions of the parties, the record, and applicable law, the Court finds that a hearing is not necessary to resolve the motion.

Ineffective assistance of counsel claims are governed by the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To establish an ineffective assistance of counsel claim,

> First the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.* at 687.

"The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.* at 688. There is a strong presumption that counsel's conduct was reasonable. *Id.* at 689; *see also Sims v. Livesay*, 970 F.2d 1575, 1579–80 (6th Cir. 1992) ("The court should begin with a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." (internal quotations and citations omitted)). Petitioner bears the burden of showing ineffective assistance of counsel. *Mason v. Mitchell*, 320 F.3d 604, 616–17 (6th Cir. 2003). "A fair assessment of attorney performance requires that every effort be made

---

[1] All citations in Section III are to the documents in Petitioner's criminal case, Case No. 1:17-cr-118, unless otherwise specified.

to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. While both prongs must be established in order to meet Petitioner's burden, if "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Id.* at 697.

Here, Petitioner has asserted three claims of ineffective assistance of counsel. The Court will evaluate each claim in turn.

**A. Counsel Failed to File a Direct Appeal Due to an Alleged Conflict of Interest**

Petitioner asserts that her counsel was deficient because "Counsel refused to file a direct appeal on her behalf. There was no waiver filed after sentencing that would show that [Petitioner] did not want to file an appeal. Counsel never gave [Petitioner] a reason as to why she would not file a direct appeal." (Doc. 4 in Case No. 1:19-cv-265 at 1.) Petitioner speculates this occurred due to a "conflict of interest" from her appellate counsel being employed in the same office as her trial counsel (*i.e.*, they were coworkers). (*Id.*)

In *Roe v. Flores-Ortega*, 528 U.S. 170 (2000), the Supreme Court instructed that when the defendant did not tell her attorney whether to file an appeal, the court must determine whether the attorney consulted with the defendant about the "benefits and drawbacks of bringing an appeal." *Regalado v. United States*, 334 F.3d 520, 525 (6th Cir. 2003) (citing *Flores-Ortega*, 528 U.S. at 478). Consultation requires the attorney to make a "reasonable effort to discover the defendant's wishes." *Flores-Ortega*, 528 U.S. at 478. If the attorney has consulted the client, then counsel

5

only performs in a constitutionally deficient manner if the attorney fails to follow the defendant's "*express instructions* with respect to an appeal." *Regalado*, 335 F.3d at 525 (emphasis in original).

Here, Petitioner states that she "spoke with counsel about the filing of a notice of appeal." (Doc. 4 in Case No. 1:19-cv-265 at 1.) But missing from Petitioner's claim is whether counsel had ever received express instructions to file or not to file an appeal. Even construed liberally, Petitioner's conclusory contention that her counsel "simply ignored her constitutional imposed [sic] duty" (*id.*) does not give rise to a legitimate factual dispute that would trigger an evidentiary hearing. Her counsel had in fact consulted with her about filing an appeal, which is sufficient under the demands of the Sixth Amendment. The absence of a plea waiver is irrelevant; under *Flores-Ortega*, the crucial test is whether defendant communicated to counsel an express instruction to file an appeal. 528 U.S. at 478. And on the facts as given, Petitioner did not instruct her counsel to file an appeal.

Moreover, Petitioner lacks a factual basis for claiming that she was prejudiced by her appellate counsel's supposed conflict of interest from serving in the same office as Petitioner's trial counsel. "[P]rejudice is presumed when counsel is burdened by an actual conflict of interest." *Strickland*, 466 U.S. at 692. The defendant must demonstrate that "an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan*, 466 U.S. 335, 350 (1980). "An actual conflict will not be found unless a defendant can identify 'specific instances in the record to suggest an actual conflict or impairment'" of her interests. *Neeley v. Haney*, 467 F. App'x 449, 451 (6th Cir. 2012) (quoting *United States v. Hall*, 200 F.3d 962, 965-66 (6th Cir. 2000)).

Here, Erin Rust of the Federal Defender Services of Eastern Tennessee was appointed to represent Petitioner on September 28, 2017. (Doc. 7.) Ms. Rust was later replaced by Leonard M. Caputo, a solo practitioner in private practice, on December 6, 2017. (Docs. 17, 18.) Mr. Caputo

6

represented Petitioner until his death on May 18, 2018. (Doc. 32.) On May 31, 2018, Gianna Maio of the Federal Defender Services of Eastern Tennessee was appointed to represent Petitioner. (Docs. 32, 33.) Although Ms. Maio and Ms. Rust, both in the Federal Defender Services of Eastern Tennessee, represented Petitioner at different points of her case, it was Mr. Caputo who represented her during the execution of the plea agreement. (Doc. 21 at 1.) There could not have been an actual conflict of interest because Mr. Caputo represented Petitioner during her decisions to forego pretrial motions and to plead guilty to the offense on which she remains incarcerated. Mr. Caputo's acts during the presentencing stage of Petitioner's criminal case would not have caused Ms. Maio or Ms. Rust to be conflicted about filing an appeal postsentencing. Petitioner failed to show that Ms. Maio labored under an actual conflict of interest despite Ms. Maio's "coworker" representing Petitioner in an earlier stage of the proceeding. Indeed, Ms. Maio made diligent efforts to represent Petitioner's interests, including moving for a downward variance during sentencing (*see* Doc. 53) and objecting to a weapons enhancement suggested in the presentence report (*see* Doc. 52).

Accordingly, Petitioner showed neither deficient performance nor prejudice in her decisions to plead guilty and to forego a direct appeal.

### B. Counsel Failed to Suppress Evidence that was Obtained in Violation of Petitioner's Fourth Amendment Right

Petitioner argues that her "counsel's failure to object to the illegal search . . . allowed law enforcement the opportunity to attribute additional quantities of drugs that significantly increased her sentence." (Doc. 4 in Case No. 1:19-cv-265 at 2.) Petitioner claims that the warrant issued to search her house did not include a search of her cellphone. (*Id.*) Because law enforcement searched her cellphone, the amount of drugs attributed to Petitioner was higher than it otherwise

would have been, thus increasing her sentence. (*Id.*) Petitioner states that her "counsel should have move[d] to suppress evidence that was obtained in violation of her Fourth Amendment right," and "because [her] counsel did not move to suppress evidence that the warrant did not address, her sentence was more than necessary." (Doc. 3 in Case No. 1:19-cv-265 at 5.)

The Government disagrees primarily because it is unclear which law enforcement encounter she is speaking of: "Although agents looked at the petitioner's cell phone in February 2017, with her permission, doing so only revealed her connection to another methamphetamine supplier, without linking to her any specific drug quantities." (Doc. 7 in Case No. 1:19-cv-265 at 8.) Furthermore, the Government suggests Petitioner may be referencing another traffic stop that occurred in August 2017. (*Id.*) In the August 2017 stop, "no warrant was involved in that encounter nor did agents 'use' her phone." (*Id.*) Thus, Petitioner's penalty range resulted from the February 2017 seizure alone, rather than the August 2017 traffic stop.

Setting aside the ambiguities in Petitioner's motion, the record indicates that "[Petitioner] gave law enforcement permission to look through her phone." (Doc. 34 at 5.) It is well settled under the Fourth Amendment that consent is an exception to a warrantless search. *Schneckloth v. Bustamente*, 412 U.S. 218, 219 (1973). Because Petitioner consented to law enforcement's search of her cellphone, the evidence was obtained constitutionally.[2] Petitioner's allegation therefore

---

[2] Even assuming for the sake of argument that the warrantless search of Petitioner's cellphone was obtained in violation of the Fourth Amendment, *Stone v. Powell*, 428 U.S. 465, 494 (1976), precludes the courts from granting federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search was introduced at trial.

cannot be accepted as true because the warrantless search of her cellphone was rendered constitutional by her consent.

Petitioner has failed to meet her burden for either prong of *Strickland*. First, Petitioner failed to show that counsel's performance was deficient. It would have been pointless for counsel to move to suppress the evidence because it was obtained properly: "[t]rial counsel's failure to bring a meritless suppression motion cannot constitute ineffective assistance." *Brown v. McKee*, 231 F. App'x 469, 475 (6th Cir. 2007) (quoting *United States v. Tisdale*, 195 F.3d 70, 73–74 (2d Cir. 1999)). Second, Petitioner was not prejudiced because she still pleaded guilty despite counsel's supposed failure to move to suppress the fruits of the cellphone search, and she did not raise any facts reasonably supporting the possibility that she otherwise would not have pleaded guilty. Furthermore, even if the fruits of the cellphone search had been suppressed as illegally obtained evidence during the guilt phase, the sentencing court could have constitutionally considered them during the sentencing phase. *United States v. Jenkins*, 4 F.3d 1338, 1344 (6th Cir. 1993) (holding that illegally seized evidence may be considered at sentencing as long as the evidence was not obtained for the purpose of enhancing the defendant's sentence). In sum, Petitioner's claim of ineffective assistance of counsel on this ground must fail regardless of any facts she might introduce at an evidentiary hearing.

### C. Counsel Failed to Object to Guideline Enhancement

Finally, Petitioner argues that her counsel failed to object to the "drug-house" enhancement, USSG § 2D1.1(b)(12), so her sentence was higher than it otherwise would have been (Doc. 4 in Case No. 1:19-cv-265 at 2, 3.) The drug-house enhancement applies to anyone who "(1) knowingly (2) opens or maintains any place (3) for the purpose of manufacturing or distributing a controlled substance." *United States v. Johnson*, 737 F.3d 444, 447 (6th Cir. 2013)

9

(citation omitted). Petitioner claims that this enhancement did not apply to her because "she resided in her home for several years as a residence." (Doc. 4 in Case No. 1:19-cv-265 at 2.) However, it is well established that a defendant may still qualify for the drug-house enhancement as long as one of her "primary or principal uses for" her home is the manufacture or distribution of drugs. *United States v. Hagan*, 766 F. App'x 356, 359 (6th Cir. 2019). The enhancement applies even when the place is used for storage of a controlled substance for later distribution. *Id.* (citing *Johnson*, 737 F.3d at 447–48).

Here, the evidence shows that Petitioner's home carried all the characteristics of a drug business. Petitioner diminishes the role that her home played in the conduct for which she was convicted, contending that it was merely where she "use[d] and abuse[d]" drugs. (Doc. 4 in Case No. 1:19-cv-265 at 2–3.) But her home played a significant part in her drug dealings. The February 3, 2017, search of Petitioner's home turned up 375 grams of methamphetamine, digital scales, and drug ledgers, with Petitioner sitting in the living room packaging methamphetamine. (Doc. 34 at 102.) The June 15, 2016, search turned up approximately four ounces of methamphetamine, one firearm, cash, and resale notes and logs. (*Id.* at 103.) Petitioner was regularly selling methamphetamine from her home, with prospective buyers pulling up into the driveway and her suppliers showing up at the house with bulk product. (*Id.*) The continuous presence of large amounts of cash, distribution paraphernalia, firearms, and customers supports the conclusion that Petitioner's home played a significant part in her drug enterprise. Because the enhancement applies, no other or additional argument by Petitioner's counsel could have changed

this result. Accordingly, Petitioner cannot show she was prejudiced by any failure of her counsel to object to the drug-house enhancement.

Because she has shown neither deficient performance nor prejudice from her counsel's alleged errors, Petitioner has not shown she received ineffective assistance of counsel. Thus, the Court concludes that Petitioner is not entitled to an evidentiary hearing. Her claim of ineffective assistance of counsel must fail regardless of any facts she might introduce at a hearing.

## VI. CONCLUSION

For the foregoing reasons, Petitioner's § 2255 motion (Doc. 3 in Case No. 1:19-cv-265, Doc. 62 in Case No. 1:17-cr-118) will be **DENIED**. Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability ("COA") should be granted. A COA should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To warrant a grant of a COA, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Court finds that reasonable jurists could not conclude that Petitioner's claims deserve further review, as Petitioner has failed to make a substantial showing of the denial of a constitutional right and reasonable jurists would not debate the Court's finding that Petitioner is not entitled to relief under § 2255. Accordingly, a COA will not issue. It is therefore **CERTIFIED**, pursuant to Fed. R. App. P. 24(a), any appeal in this matter

by Petitioner is not taken in good faith, and she may not proceed *in forma pauperis*. *United States v. Atkins*, 171 F. Supp. 2d 769 (W.D. Tenn. 2001).

**AN APPROPRIATE ORDER WILL ENTER.**

/s/
**CURTIS L. COLLIER
UNITED STATES DISTRICT JUDGE**